RECEIVED
MAR 16 2015
BY MAIL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
_____ DIVISION

Mr. DARNELL Wilson #1202         )
                                  )
ST. Louis County Justice Services )
                                  )
_____)
(Enter above the full name of the )
Plaintiff(s) in this action. Include prison )
registration number(s).)          )
                                  )
         v.                       )
                                  )           Case No. _____
ST. LOUIS County, DESPERES        )           (To be assigned by Clerk)
                                  )
Det. Trent Koppel, DSN 172        )
                                  )
Sgt. Daniel Milberg, DSN 141      )
                                  )
P.O Nathaniel Jaeger, DSN 208     )
                                  )
Det Matthew Wilson, DSN 3403      )
(Enter above the full name of ALL Defend- )
ant(s) in this action. Fed. R. Civ. P. 10(a) )
requires that the caption of the complaint )
include the names of all the parties. Merely )
listing one party and "et al." is insufficient. )
Please attach additional sheets if necessary. )

### PRISONER CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983

I.   PLACE OF PRESENT CONFINEMENT:

     ST. Louis County Justice Services 100$^5$ Central Ave Clayton Mo 63105

II.  PREVIOUS CIVIL ACTIONS:

     A.   Have you brought any other civil actions in state or federal court dealing with the same facts involved in this action or otherwise relating to your confinement?

          YES [ ]                    NO [✓]

B. If your answer to "A" is YES, describe the action(s) in the space below. If there is more than one action, you must describe the additional action(s) on a separate piece of paper, using the same format as below.

1. Parties to previous civil action:

   Plaintiff(s): _____

   _____

   Defendant(s): _____

   _____

2. Court where filed: _____

3. Docket or case number: _____

4. Name of Judge: _____

5. Basic claim made: _____

   _____

   _____

6. Present disposition (Is the case still pending? Is it closed? If closed, was it appealed?):

   _____

III. GRIEVANCE PROCEDURES:

A. Is there a prisoner grievance procedure at the institution in which you are incarcerated?

   YES [ ]           NO [✓]

B. Have you presented this grievance system the facts which are at issue in this complaint?

   YES [ ]           NO [✓]

    C.    If your answer to "B" is YES, what steps did you take: _____

_____

_____

    D.    If your answer to "B" is NO, explain why you have not used the grievance system:

_____

_____

IV.    PARTIES TO THIS ACTION:

    A.    Plaintiff(s)

        1.    Name of Plaintiff: _____

        2.    Plaintiff's address: _____

        3.    Registration number: _____

        4.    Additional Plaintiff(s) and address(es): _____

_____

_____

    B.    Defendant(s)

        1.    Name of Defendant: _____

        2.    Defendant's address: _____

        3.    Defendant's employer and job title: _____

_____

        4.    Additional Defendant(s) and address(es): _____

_____

_____

V.  COUNSEL

   A.  Do you have an attorney to represent you in this action?

   YES [ ]          NO [✓]

   B.  If your answer to "A" is NO, have you made an effort to contact an attorney to represent you in this matter?

   YES [✓]          NO [ ]

   C.  If your answer to "B" is YES, state the name(s) and address(es) of the attorneys you contacted and the results of those efforts:

   PHILIP Eisenhauer 1015 Locust ST. Louis Mo 63101

   Mack Byrne 818 Lafayette Ave ST. Louis Mo 63104

   D.  If your answer to "B" is NO, explain why you have not made such efforts:

   E.  Have you previously been represented by counsel in a civil action in this Court?

   YES [ ]          NO [✓]

   F.  If your answer to "E" is YES, state the attorney's name and address:

-4-

VI. Statement of claim (State as briefly as possible the facts of your case. Describe how each defendant is involved. You must state exactly what each defendant personally did, or failed to do, which resulted in harm to you. Include also the names of other persons involved, dates, and places. Be as specific as possible. State your claims in numbered paragraphs. You may use additional paper if necessary):

1. On January 15, 2015 Des Peres Police Dept violated my 4, 5, 6, 14 Amendment Constitutional Rights by using deadly and excessive force on a Petty Larceny offce at the T.J Maxx Store at 12129 Manchester Road at about 1:20pm.

2. The way Des Peres Police Sgt Daniel Milberg and det Trent Koppel handle this situation violated my 4th Amendment by the Use Of Deadly And Excessive force on a larcening charge with a value of $139.00

3. Des Peres Officer came with deadly force, they violated me by the way they tried to seize and apprehend me there was at least five shots fired at me, I was shot directly in the left top part of my arm, which broks and shattered my humerous bone, which has left me paralyzed in my left arm.

5. Det Matthew Wilson, lied to me saying he just wanted to talk. I had no clue that I was being recorded while talking He told me he just want to talk. P.O Jaeger is in conspiracy with these officers covering up the actual fact of knowing Det Trent Koppel fired her weapon.

-5-

SEE Attachment

ATTACHMENT

Pg 5                                                                 Mar 9, 2015

On January 15, 2015 at about 1:20pm PO Jaeger admitted to was dispatched for a Larceny offense at the T.J. Maxx store on Manchester Rd. So he arrived there waiting in his vehical.

Mr Darnell Wilson and the passenger Donnie Dusmukes were headed west on Manchester going to 270 North off of the T.J. Maxx store property, while in traffic we heard sirens but no one was summoning us to pull over at 30 police officers were out there with weapons drawn out ready to use deadly force. I was more closer to the curb, my wheels were turned to the right I seen some shinny, spark and flash. Det Trent Koppel must have thought I was about to jump the curb Det Trent Koppel fired into my car hitting me in the left arm shattering and breaking my humerous bone. As I lost control of the car after being shot several more shots ring out Sgt Daniel Milberg another Des Peres police officer fired two rounds into my front windshield if those two shots wouldve hit me they wouldve been fatal. Sgt Milberg is covering up for Det Koppel and PO Jaeger

This was extreme deadly and excessive force on a Larceny offense beside it's a conspiracy they covered up for Det Trent Koppel her gun was never tested to see if it was fired only gun was tested was Sgt Milberg which that day Des Peres Police Dept violated my 4th, 5th, 6th and 14th Amendment Constitutional Rights. After being apprehended I was taken to Mercy Hospital on Ballas Rd. to be treated for a gun shot wound. I stayed there several days then I was taken over to St Louis Co to talk with Det Matthew Wilson he violated my rights as well he didnt tell me our conversation was being recorded.

On 3-10-15 while still here at St Louis Co I recieved my

"MOD" motion of discovery I have a witness statement saying she saw Det Trent Koppel fire 3 shots in what was called the black charger.

(See Tennesse v. Garner Memphis Police Department v. Garner, 471 US.1. 105 S. Ct 1694. 85 L.Ed. 2d 1 (1985) The Court of Appeals reversed and remanded. 710 F. 2d (1983) It reasoned that the killing of a fleeing suspect is a seizure under the forth Amendment. Id at 246. Officers cannot resort to deadly force unless the have probable cause... to believe that the suspect committed a Felony though not Misdormeanor and pose a threat to the safety of the officer are a danger to the community if left at large." DesPeres Sgt Daniel Milberg and Det Trent Koppel had full knowledge that no felony was committed at the time they both fired shots and shot me. PO Jaeges got the dispatch for a Larceny at T.J. Max on 1-15-15 at 1:20pm.

12A It is insisted that the forth Amendment must be construed in in light of the common law rule, which allowed the use of whatever force was necessary to effect the arrest of a fleeing Felon though not a Misdormeanor as stated in Hale's posthumously published Pleas of the Crown: See 4 W. Blackstone, Commentaries *289 Most American jurisdiction also impose a flat prohibition against the use of deadly force to stop a fleeing Misdemeanant couple with a general privilege to use such force to stop a fleeing felon. Holloway v Moser, 193 N.C. 185, 136 S.E 375 (1927). One other aspect of the common law rule bears emphasis It forbids the use of deadly force to apprehend a Misdemeanant condeming such action as disproportionately severe. See Holloway v. Moser 193 N.C., at 187, 136 S.E. at 376' State v. Smith, 127 Iowa, at 535, 103 N.W 945. See generally Annot 83, A.L.R. 3d 283 (1978)

VII. RELIEF

State briefly and exactly what you want the Court to do for you. Do not make legal arguments. (Note: If you are a **state** prisoner and you seek from this Court relief that affects the length or duration of your imprisonment, your case **must** be filed on a § 2254 form.)

Charge dropped on 2nd Degree Assualt on Law Enforcement Resisting Arrest, and 3rd Offense Stealing. I want to be compensated for punitive damage this Sgt from DePres Police Dept caused me for the pain and sufferings, Assualting me, false Incarseration, and etc.

VIII. MONEY DAMAGES:

A) Do you claim either actual or punitive monetary damages for the acts alleged in this complaint?

YES ☑   NO ☐

B) If your answer to "A" is YES, state below the amount claimed and the reason or reasons you believe you are entitled to recover such money damages:

$2,000,000.00 million dollars in damages. I was shot for a larceny offense, Shattered Humeroos Bons, Mental Anguish, Pain and Suffering, false incarseration, Hospitalization plus bills, Assualt, Police Brutality

IX. Do you claim that the wrongs alleged in the complaint are continuing to occur at the present time?

YES [✓]   NO [ ]

Mr. Darnell R. Wilson

_____
Signature of attorney or pro se Plaintiff(s)

Mar 9, 2015
Date

-6-

Date/Time Printed: 03/06/2015 10:13:11
Printed By / Reason: #perrc1 / Lt Longworth

15-2515

*(These are pages from my Motion of Discovery)*

At approximately 6:50 p.m., Captain Milano, Detective Koppel and PO Jaeger arrived at the Division of Criminal Investigation offices for formal recorded interviews.

At approximately 6:55 p.m., Detective Wilson spoke with PO Jaeger in a conference room. PO Jaeger agreed to complete an audio recording of his account of the incident. A department issued digital recorder was used to capture the statement. PO Jaeger's audio statement was later transferred from the digital recorder to a CD which was packaged as evidence and released to the Saint Louis County Property Control Unit.

The following is a synopsis of the interview. Full details of the interview can be heard on the associated CD.

*Using Deadly and Excessive Force on a "Misdormeanor"*

PO Jaeger indicated he was dispatched for a larceny in progress at the TJ Maxx on Manchester Road. After arriving, he waited in his vehicle on the eastern end of the parking lot near the McAlister's Deli at the request of TJ Maxx employees. While waiting in his vehicle, he heard from his dispatcher that the suspects from the shoplifting were leaving the parking lot in a black Dodge Charger. The dispathcer provided a partial license plate on the vehicle. At the same time, he observed the vehicle in question pulling out of the parking lot onto westbound Manchester Road. The dispatcher also indicated the subjects had concealed multiple items and left the store without paying for them.

PO Jaeger said as the vehicle pulled onto Manchester Road, it was forced to stop in traffic due to the traffic on Manchester Road already stopped. PO Jaeger pulled in behind the vehicle with his lights and siren activated. PO Jaeger could also see Sergeant Milberg had also blocked traffic on Manchester Road at the western end of the parking lot. Sergeant Milberg got out of his vehicle and about the same time, he could see the vehicle in question pull up onto the curb and drive through the grass, on the sidewalk and toward Sergeant Milberg's location. PO Jaeger began to follow the vehicle. As the vehicle was driving toward Sergeant Milberg, PO Jaeger heard the vehicle apparently accelerate. He heard Sergeant Milberg give several commands to stop. PO Jaeger estimated Sergeant Milberg was approximately 5 feet away from the vehicle when he heard him fire two rounds toward the vehicle as it was driving toward him. The vehicle continued to drive until it returned to Manchester Road where in continued traveling westbound. The vehicle continued through a red light at the intersection of Manchester Road and Ballas Road. After driving through the intersection, the vehicle pulled off at the entrance to Edward Jones Corporate Offices.

After the vehicle stopped, both individuals got out of the vehicle. The passenger took several steps, put his hands up and appeared to surrender.



(1)

Date/Time Printed: 03/06/2015 10:13:11
Printed By / Reason: #perrc1 / Lt. Longworth

15-2515

He identified Sergeant Milberg as the only officer who fired his duty weapon. *- 2 shots*
*milberg fire two shots through the front windshield*

Those officers had been removed from the scene and were awaiting interviews at the Des Peres Public Safety Building.

Des Peres detectives not involved in the incident were securing the original scene at 12129 Manchester Road.

Captain Milano provided detectives a list of individuals who were employees of Edward Jones and who witnessed the incident.

Detective Darin Marcinkiewicz, DSN 3355, and Detective Daniel Davis, DSN 3193, both of the Saint Louis County Police Department's Division of Criminal Investigation, Crime Scene Unit, arrived at the scene and conducted their investigation. The Crime Scene Unit's supplemental report can be viewed for additional details.

The scene at 12555 Manchester Road consisted of the intersection and area around Manchester Road at West County Center Drive. North of the intersection was the entrance to the Edward Jones Corporate Offices. Stopped across the northbound entrance lanes was an abandoned:

2006 black Dodge Charger 4 door vehicle with white trim along the side
Missouri License Plate: FK4-R2B for 2016
VIN: 2B3KA43G76H213989

The vehicle was registered to:

Melessia A. Jones
3514 Paris Avenue
Saint Louis, Missouri 63115

The vehicle had a circular defect in the front windshield. The driver's side window had multiple cracks consistent with a projectile striking it. The window was partially down concealing the apparent point of impact. There was a flat tire on the front passenger side and body damage to the lower portion of the passenger side. Apparent blood was observed on the upper left portion of the driver's seat.

The vehicle was later towed by D and L Towing to the Saint Louis County Vehicle Processing Facility.

Lying to the west of the vehicle and near a sewer, in the turn lane from the Edward Jones Corporate Offices to westbound Manchester Road, were several items of evidentiary value including a black vest, cut clothing from a sweat shirt and sweat pants with apparent blood, a black



was equipped with video surveillance. Detective Bradley observed the exterior ATM camera faced the intersection where the incident occurred.

Detective Bradley requested a copy of the exterior ATM video surveillance from the incident date and time. Krisanic advised Detective Bradley to submit a subpoena in order to obtain the video surveillance.

Detective Bradley then departed the PNC Bank.

Detective Walton entered the business at 12230 Manchester Road, Central Bank and spoke with the Vice President who identified herself as:

Janice M. Furrer    WITNESS
White Female
DOB: 05/19/1960
SSN: 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
4836 Daltrey Court
Saint Louis, Missouri 63129
Mobile phone: 314-799-3608

Furrer explained she witnessed a portion of the incident and was willing to make a statement. Furrer agreed to have a portion of the interview recorded. Detective Walton utilized his Saint Louis County Police Department issued digital audio recorder to record a portion of the interview. Detective Walton later transferred Furrer's recorded statement to a CD-R which was packaged as evidence and later released to the Saint Louis County Property Control Unit.

The following is a synopsis of the interview with Furrer. Full details of her statement can be heard on the associated CD.

Furrer explained prior to the incident, she was in her vehicle and stopped at the electric signal at the intersection of westbound Manchester Road and Blase Avenue. Furrer's vehicle was in the left turn lane as she waited for the electric signal to change. Furrer said she heard emergency sirens sounding east of her. Furrer said she observed a marked police SUV with its emergency lights activated block the right lane of westbound Manchester Road at Blase Avenue. Two officers exited the vehicle and began moving east and toward the sidewalk on the north side of Manchester Road.

Furrer said the driver of the police vehicle was a uniformed police officer whom she described as a white female with dark hair in a ponytail. Furrer also observed a uniformed male officer in the vehicle with the female officer. Furrer said the male officer exited the vehicle however; from her vantage point she lost sight of him. Furrer further advised the female officer had her gun out when she exited the police



vehicle. <u>Furrer said she observed a black Dodge Charger drive up on the curb along the north side of Manchester Road. Furrer then observed the female officer fire her gun three times</u> at what Furrer believed to be the <u>black Dodge Charger.</u> *3 shots Det Koppel fired first, gun wasn't tested.*

Furrer said the charger continued around the police SUV and back onto the roadway. Furrer said the vehicle was traveling at a high rate of speed and began to fishtail. Furrer explained the vehicle came close to striking another vehicle that was stopped at the electric signal, in the left turn lane of Manchester Road at Blase Avenue. The driver of the black Dodge Charger regained control of the vehicle before striking the vehicle and continued west in the westbound lanes of Manchester Road at a high rate of speed.

<u>Furrer said the female and male officer ran back to their police vehicle.</u> She also said a second police SUV with its lights and siren on passed her vehicle along the driver side. The second police SUV was traveling in the eastbound lanes, traveling west, when it passed her vehicle. The second police SUV chased after the black Dodge Charger followed by the first police SUV she observed which had been occupied by the female and male officer. Furrer said her light turned green and she completed her turn onto Blase Avenue. Furrer then returned to work.

The interview with Furrer was concluded.

No other employees of the Central Bank witnessed any portion of this incident.

At approximately 4:45 PM, Detective Adams was directed by Detective Wilson to contact a potential witness, "Jesse Adams," at 314-517-2380.

Detective Adams telephoned "Jesse" who agreed to meet with investigators near 1080 Lindemann Road.

Detective Adams and Detective Walton traveled to the location and contacted:

Jesse A. Adams
White Male
DOB: 01/02/1970
2 Briarwick Trails
Saint Peters, Missouri 63376
Mobile phone: 314-517-2380

Jesse was escorted to Detective Adams' unmarked police vehicle to be interviewed.



Date/Time Printed: 03/06/2015 10:13:11
Printed By / Reason: #perrc1 / Lt Longworth

15-2515

On Friday, January 16, 2015 at approximately 9:17 a.m., Detective Wilson met with Sergeant Milberg at the Division of Criminal Investigation for a previously scheduled recorded interview.

Sergeant Milberg indicated on Wednesday January 14, 2015, his scheduled duty hours were 8:00 a.m and 4:00 p.m. as a police officer. He was then scheduled to work from 4:00 p.m. to 8:00 a.m. on Thursday, January 15, 2015 as a firefighter/paramedic. He was working in his full duty Des Peres Police Department uniform and was operating a fully marked Des Peres patrol vehicle.

Sergeant Milberg indicated was dispatched along with PO Jaeger to a stealing in progress at the TJ Maxx on Manchester Road. As he was leaving the police department to go to the scene, Detective Koppel approached him and said she would go with him.

After they arrived at the scene, they remained in the police vehicle in the parking lot and awaited further information from employees of TJ Maxx. A short time later, TJ Maxx employees provided updated information to the officers, via a dispatcher, about the suspects and their actions in the store to include concealing items and ripping tags off of items.

After several minutes, Sergeant Milberg and other officers received word the suspects had left the store and were in a black Dodge Charger that was pulling onto Manchester Road.

Sergeant Milberg drove south in the parking lot and stopped at the intersection of Blase and Manchester Road. Looking east, Sergeant Milberg could see PO Jaeger was behind a black Dodge Charger.

Sergeant Milberg turned his vehicle to the east and he blocked westbound traffic on Manchester Road. About the time Sergeant Milberg was getting out of his vehicle, he noticed the Dodge Charger was angled in a manner which caused him to announce the vehicle was possibly going to try and jump the curb.

*How could he be in danger, Det Koppel shot first*

As soon as Sergeant Milberg got out of his vehicle, he observed the Dodge Charger drive up on the grass and sidewalk and drive toward him. He said at one point the vehicle accelerated. Sergeant Milberg began yelling, "Stop!" and "Police!" He indicated he did not know where Detective Koppel was located after she exited the vehicle and he thought the Dodge Charger was going to hit him. With the vehicle driving toward him and fearing for his safety, Sergeant Milberg fired two times into what the thought was the front windshield.

