# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| DARNELL WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   4:15-CV-476-AGF |
| | ) | |
| ST. LOUIS COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the joint motion of Defendants Daniel Milberg and Trent Koppel to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 27). Plaintiff Darnell Wilson opposes the motion, and the issues have been fully briefed. For the reasons stated below, Defendants' motion to dismiss will be denied.

## Background

Plaintiff, an inmate at the Algoa Correctional Center, initially brought this action against Defendants St. Louis County, T.J. Maxx Co., and Des Peres police officers Nathaniel Jaeger, Trent Koppel, and Daniel Milberg in their individual capacities for the violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff attached to his original complaint several portions of a Des Peres

1

police report relating to the January 14, 2015 incident that is the subject of this action, and he added his own hand-written comments, challenging numerous statements set forth therein (Doc. No. 16). Thereafter, Plaintiff filed an amended complaint further setting forth his claims against Defendants (Doc. No. 11), as well as two letters dated March 30, 2015, and July 8, 2015 (Doc. Nos. 5 and 15).[1]

In its March 3, 2016 Memorandum and Order (Doc. No. 21), after considering the complaint, amended complaint, attached exhibits, and letters from Plaintiff, this Court ordered the Clerk to issue process on plaintiff's excessive-use-of-force claims against Defendants Milberg and Koppel in their individual capacities; all remaining claims and parties were dismissed without prejudice. On March 21, 2016, Defendants filed a joint answer to the amended

---

[1] On March 30, 2015, and July 8, 2015, the Court received undated letters from Plaintiff (Doc. Nos. 5 and 15). Plaintiff is advised that he should not file letters with the Court, but rather should file proper court pleadings with a caption, a heading identifying what the pleading is (for example, Motion to Amend or Motion to Compel), and clearly identify what action or relief Plaintiff is seeking through the document filed. Nonetheless, the court did consider the letters filed by Plaintiff. In the March 30, 2015 letter, Plaintiff stated he was writing because he sees "so much covering up, lies, deceit and conspiracy going on with this case." In the July 8, 2015 letter, Plaintiff requested appointment of counsel. In each letter, Plaintiff discussed the facts underlying this case. The Court noted it its March 3, 2016 Memorandum and Order that to the extent these letters reference events that are the subject of the instant action, they would be treated as supplements to the amended complaint (Doc. No. 21, p. 5).

complaint (Doc. No. 26), as well as the instant joint motion to dismiss based on the affirmative defense of qualified immunity (Doc. No. 27).

## Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint so as to eliminate claims "which are fatally flawed in their legal premises . . . thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). To survive a motion to dismiss for failure to state a claim, a complaint need not contain "detailed factual allegations," but it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Roberts v. Walmart Stores, Inc.*, 736 F. Supp. 1527, 1528 (E.D. Mo. 1990) (motions to dismiss should not be granted merely because pleadings do not state with precision every element of the offense necessary for recovery). The allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

The Court must give a pro se pleading the benefit of a liberal construction, *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When determining whether a

complaint has stated a cause of action sufficient to survive a motion to dismiss in a civil rights action, the pleading should be generously construed in favor of the plaintiff. *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). Moreover, a federal court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Fed.R.Civ.P. 12(b)(6); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The task of a Court is then "to review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir.2010) (citing *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir.2009) (noting "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible")).

Viewing the allegations in the instant pleadings in the light most favorable to Plaintiff, the Court accepts the following facts as true for the purpose of adjudicating the instant motion to dismiss.

**Facts as Alleged by Plaintiff**

On January 14, 2015, a T.J. Maxx employee telephoned the Des Peres Police Department to report a larceny in progress. Officers Jaeger, Koppel, and Milberg responded to the call. Upon their arrival, the Officers were told Plaintiff had "concealed a pair of blue jeans in front of his pants." Officer Koppel, despite

4

knowing that no felony had been committed, used unnecessary, excessive, and deadly force against Plaintiff by firing three shots into Plaintiff's vehicle "while Plaintiff was stuck in traffic" (Doc. No. 11, p. 6). Plaintiff sustained serious bodily injury after one of the shots struck him in the shoulder and caused him to lose control of the car, after which Officer Milberg fired two more shots into Plaintiff's car. Defendant Milberg "placed his self in front of [Plaintiff's] vehicle[;] he fired twice into [the] front windshield not because of any imminent danger[;] he fired two shots because that's what he wanted to do." (Doc. No. 5, p. 2). "Sgt. Daniel Milberg gave false information in his complaint and affidavit against [Plaintiff], his shooting . . . wasn't justifiable[;] the dash camera shows that [Plaintiff's] vehicle didn't represent a direct and immediate threat to the life or safety of the police officer." (Doc. No. 15, p. 2). "The dash camera will prove he was never in fear for his life." (*Id.*, p. 3).

**Discussion**

The doctrine of qualified immunity exists to "protect public officers from liability for the exercise of discretion in performing a public duty; it reflects a decision that the public is better served by public officials who will not be deterred by fear of liability from executing the office with an independent and decisive judgment." *In re Scott Co. Master Docket*, 672 F. Supp. 1152, 1172 (D. Minn.

1987) (citing *Fowler v. Cross*, 635 F.2d 476 (5th Cir. 1981)). "Qualified immunity may protect government officials from liability under 42 U.S.C. § 1983, but not if their conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 527 (8th Cir. 2009) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted)).

In analyzing qualified immunity claims, a Court considers two questions: (1) whether the facts that a plaintiff has alleged or shown, when viewed in the light most favorable to plaintiff, support a finding that a defendant's conduct violated a constitutional right; and (2) whether that constitutional right was "clearly established" such that a reasonable official would have known that his or her actions were unlawful. *Nelson*, 583 F.3d at 528 (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

In the instant motion to dismiss, Defendants contend that their alleged conduct did not violate a constitutional right, given that "[t]he Narrative section of the Des Peres Police Department Incident Report indicates that despite order [sic] to stop, Plaintiff drove his vehicle directly at Sergeant Milberg . . . [who] utilized his firearm in response to the threat of serious physical harm from Plaintiff" (Doc. No. 27, p. 2; *see also* Doc. No. 28, p.5; Doc. No. 33, p.5). Defendants assert,

"[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." (*Id.*, p. 3). Defendants conclude that they are entitled to qualified immunity because of "Plaintiff's failure to allege conduct which would have violated a clearly established constitutional right of which a reasonable officer would have known." (*Id.*).

In his pro se response to Defendants' arguments for dismissal, Plaintiff asserts that Defendants were never in any immediate danger that would have caused serious physical injury. He states, "Neither officer had to run [or] flee for the safety of their lives. This is why both defendants Milberg and Koppel [should] be held liable." (Doc. No. 32, p. 2). In addition, Plaintiff asserts:

> Here the statement was merely that [Plaintiff] drove in the officers' direction. There is no mention of if this was actually at the officer, or merely in the same general direction of the officer. There is no mention of actually trying to run the officer down, or making the officer flee. There is no other additional conduct. Worse, there is a video of this alleged assault that shows the lack of an assault. The video doesn't show [Plaintiff] performing any action which would lead to an officer being in apprehension for his life . . . Merely operating a motor vehicle in someone's general direction is not enough to instill a fear of serious physical injury.

(Doc. No. 32, p. 3).

In their reply, Defendants again argue that deadly force may be used when a suspect threatens the infliction of serious physical harm to officers or others.

7

Thus, according to Defendants, they are entitled to qualified immunity because it was not clearly established in 2015 that an officer could be held liable for using deadly force "in response to a suspect's driving of a vehicle at an officer, by posing a serious physical threat to pedestrians by driving on a sidewalk, and engaging in a dangerous vehicular chase." (Doc. No. 33, pp. 3-4).

Plaintiff's surreply reasserts that the Des Peres Police Report does not state that he drove his vehicle "directly at" the officers, and that even his alleged conduct would not justify the use of deadly force against him. (Doc. No. 35, pp. 2-3).[2]

Having carefully reviewed the parties' arguments, the Court concludes that Plaintiff has pleaded a facially-sufficient § 1983 excessive-use-of-force claim, and Defendants' qualified immunity arguments are without merit. Defendants' reliance on the Des Peres Police Report is misplaced, given that the Report does not state that Plaintiff's vehicle was driving "directly at" the Officers. Moreover, notably absent from Defendants' argument is any mention of Plaintiff's numerous contentions that challenge the veracity and validity of that Report.

As noted *supra*, the complaint, amended complaint, attached exhibits, and March 30, 2015 and July 8, 2015 letters from Plaintiff are replete with allegations

---

[2] The Des Peres Police Report states, that the vehicle was "driving toward" Sergeant Milberg (Doc. No. 16, p. 2).

and hand-written assertions that Plaintiff was not a threat to anyone on January 14, 2015, and that Defendants were not justified in using potentially deadly force against him. As stated above, Plaintiff specifically alleges that Officer Koppel, despite knowing that no felony had been committed, used unnecessary, excessive, and deadly force against him by firing three shots into Plaintiff's vehicle "while Plaintiff was stuck in traffic." Plaintiff further alleges that Defendant Milberg "placed himself in front of [Plaintiff's] vehicle[;] he fired twice into [the] front windshield not because of any imminent danger[;] he fired two shots because that's what he wanted to do." (Doc. No. 5, p. 2). Plaintiff also claims that "Sgt. Daniel Milberg gave false information in his complaint and affidavit against [Plaintiff], his shooting . . . wasn't justifiable, [and] the dash camera shows that [Plaintiff's] vehicle didn't represent a direct and immediate threat to the life or safety of the police officer." Plaintiff wrote on the Police Report, "How could [Milberg] be in danger?" (Doc. No. 13, p. 7), and he asserts, "The dash camera will prove he was never in fear for his life."

For purposes of Defendants' motion to dismiss, the Court must accept Plaintiff's allegations as true and view them in the light most favorable to him. Plaintiff has sufficiently alleged that Defendants unjustifiably used deadly force against him, in that he never posed a threat of serious danger to anyone, and his

9

constitutional right to be free from excessive force under these circumstances was clearly established in 2015. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (use of deadly force to prevent suspect's escape is constitutionally unreasonable; where suspect poses no immediate threat to officer or others, harm resulting from failing to apprehend suspect does not justify use of deadly force). As such, it cannot be said that Plaintiff has failed to allege the violation of a clearly-established constitutional right to be free from the use of deadly force in the context of his arrest on January 14, 2015. Plaintiff's allegations sufficiently support his § 1983 excessive-use-of-force claim, and where, as here, the record presents material questions of fact regarding the events, Defendants' qualified immunity arguments are unavailing.

**Conclusion**

For the foregoing reasons, Defendants have failed to meet their burden relative to their qualified immunity affirmative defense, and therefore, their joint motion to dismiss this action will be denied without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' joint motion to dismiss [Doc. No. 27] is **DENIED**, without prejudice.

Dated this 7th day of July, 2016.

                                              */s/ Audrey G. Fleissig*
                                            UNITED STATES DISTRICT JUDGE